UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

---

ROYDAN ENTERPRISES, LTD.
c/o Daniel R. Hornung, Registered Agent
602 North 9th Street
Manitowoc, WI 54220-3924

                Plaintiff,

v.

CREDICO, INC.
c/o Megan Brandriet, Registered Agent
1212 W. Elkhorn Street
Sioux Falls, SD 57104.

                Defendant.

Case No.

---

## COMPLAINT

---

Plaintiff ROYDAN ENTERPRISES, LTD. (Plaintiff Roydan), a Wisconsin corporation, for its Complaint against Defendant Credico, Inc., d/b/a Credit Collections Bureau (Defendant CCB), a South Dakota corporation herein alleges:

### THE PARTIES

1.  Plaintiff Roydan is a corporation organized and existing under the laws of the State of Wisconsin with offices at 602 N 9th Street, Manitowoc, WI 54220-3924.

2.  Defendant CCB is a corporation organized and existing under the laws of the State of South Dakota with its principal place of business at 3550 E. Rosser Ave, Bismarck, ND 58501.

3.  Defendant CCB's Registered Agent and In-house counsel is Megan Brandriet, located at 1212 W. Elkhorn Street, Sioux Falls, SD 57104.

## OFFICERS AND EMPLOYEES OF PLAINTIFF AND DEFENDANT

4.  Duane Reiswig is Defendant CCB's President and CEO.

5.  Brenda Reiswig is Defendant CCB's Vice-President.

6.  Kim Berger, also known under the alias Kim Black, is the Northwest Division Manager for Defendant CCB.

7.  Brent Olsen, also known under the alias Brent Carter, is the Chief Operations Officer for Defendant CCB.

8.  Matt Stroh, also known under the alias Matt Ford, is the Executive Collection Manager for Defendant CCB.

9.  Megan Manis is the Chief Customer Officer for Plaintiff Roydan.

## JURISDICTION AND VENUE

10. This is an action for breach of contract.

11. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332, as Plaintiff Roydan is asserting claims for damages in excess of $75,000.00, exclusive of interest, costs and attorneys' fees, and this dispute is between a Wisconsin corporation and a South Dakota corporation.

12. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

13. This Court has personal jurisdiction over Defendant CCB in accordance with Wis. Stat. § 801.05(5).

14. The contracts that are the subject of this complaint require that they be interpreted according to Wisconsin law. Ex. 1 - 6.

## FACTUAL BACKGROUND

15. That paragraphs 1 through 14 of this Complaint are hereby re-incorporated and alleged as if fully set forth herein.

16. Plaintiff Roydan licenses sophisticated debt collection software (Software) to debt collection companies.

17. Plaintiff Roydan's Software product brands include BLOODHOUND®, ENCORE, CLIENTCONNECT, VIEWPOINT, ACCOUNT ADVANTAGE and DATA EXCHANGE.

18. Defendant CCB is a debt collection company.

19. On 30 June 2020 Kim Black (of Defendant CCB) and Megan Manis (of Plaintiff Roydan) first contacted each other regarding the possibility of Defendant CCB licensing one or more Plaintiff Roydan Software products. Kim Black stated that money will be the biggest struggle with getting ownership to transition to a new software and that there will need to be efficiency gains. Ex. 7. See also Declaration of Megan Manis, ¶ 1.

20. On 9 July 2020, Plaintiff Roydan made its initial product demonstration (initial demo) to Kim Black. Also present from Plaintiff Roydan were Megan Manis, Greg Brey, Jeff Peterson, and Joe Cohen. The initial demo provided a general overview of Plaintiff Roydan's BLOODHOUND® Software and overall product architecture. Manis Dec.,¶ 2.

21. On 10 July 2020 Kim Black emailed Megan Manis and Matt Ford. Kim Black stated that she met with her team regarding the initial demo. She requested an estimate of cost to share with Defendant CCB Owners "so they don't waste Roydan's time." Ex. 8.

22. On 16 July 2020 Defendant CCB and Plaintiff Roydan had a Pricing Review Meeting. Attending the meeting were Beth Flores, Greg Brey, and Megan Manis of Plaintiff

3

Roydan and Kim Black and Matt Ford of Defendant CCB. The meeting occurred via "GoToMeeting" and its purpose was to walk Defendant CCB through Plaintiff Roydan's pricing proposal as well as discussion about typical return on investment (ROI) seen from similar transitions. A follow-up email was sent by Megan Manis along with preliminary pricing for discussion purposes. This pricing included a breakdown of data conversion costs along with base BLOODHOUND® Software license fees, a preliminary discount structure, and typical reduction figures. Ex. 9 - 12.

23. On 27 July 2020 Plaintiff Roydan hosted a demonstration of the ENCORE Software product (Encore Demo) with Kim Black and Matt Ford of Defendant CCB. Present from Plaintiff Roydan were Megan Manis, Greg Brey, Jeff Peterson, and Joe Cohen. Manis Dec., ¶ 3.

24. Also on 27 July 2020, Megan Manis met with Kim Black, Matt Ford, Jeff Peterson and Greg Brey to discuss the ENCORE Software product. Megan Manis sent a breakdown of pricing following this meeting based on the usage estimates that Matt Ford provided to Plaintiff Roydan. Ex. 13 - 15.

25. On 19 August 2020 Matt Ford of Defendant CCB put together an internal business case for their evaluation of Plaintiff Roydan's Software proposal including a breakdown of Defendant CCB's estimated cost savings as well as a breakdown of Plaintiff Roydan's fees. Matt Ford sent a copy of these documents to Megan Manis. Ex. 16 - 18.

26. On 25 August 2020 there were a series of emails between Matt Ford and Megan Manis discussing presentation planning. Matt Ford was planning to attend a Defendant CCB board meeting on 15 September 2020 and get the board to watch a demo and go through Matt Ford's BLOODHOUND® Software transition sales proposal. Ex. 19.

27. On 1 September 2020 Defendant CCB sent a copy of its current Billing Tree contract to Plaintiff Roydan. Ex. 20.

28. On or before 8 September 2020 Duane Reiswig, President and CEO of Defendant CCB, proposed a series of questions to Plaintiff Roydan regarding the capabilities of its Software products. Ex. 21.

29. On 8 September 2020 Joe Cohen of Plaintiff Roydan sent over answers to all of Duane Reiswig's questions along with customer references and agencies open to a visit from Defendant CCB. Subsequently, Duane Reiswig sent over a series of additional questions and Plaintiff Roydan provided answers to these additional questions as noted in Ex. 21 - 22.

30. On 10 September 2020 Megan Manis contacted Matt Ford and Kim Black to see if they needed anything additional in preparation for their board meeting the next week. Megan Manis also gave them onsite discovery dates to consider: the weeks of October 5th or October 12th. Ex. 23.

31. On 10 September 2020 Megan Manis received an email from Matt Ford forwarding Duane Reiswig's response to Plaintiff Roydan's answers to his questions. Duane Reiswig stated that he wanted answers in writing and said: "To me what is said in the "sales promise / pitch" is as important as what's in the contract." Ex. 24.

32. On 23 September 2020 there was an onsite visit at Defendant CCB's Bismarck, ND office. Megan Manis and Dan Hornung flew to Bismarck to meet with Duane Reiswig and his team in person. Megan Manis and Dan Hornung immediately had a lunch meeting with Kim Black. After lunch, Duane Reiswig and Brent Olsen came into the conference room to meet with Dan Hornung and Megan Manis. Duane Reiswig reviewed his comparison of fees between his

5

Case 1:21-cv-00669-WCG   Filed 05/27/21   Page 5 of 16   Document 1

existing software systems and Plaintiff Roydan's BLOODHOUND® Software system. Manis Dec., ¶ 4.

33. After lunch, at the 23 September 2020 meeting between the representatives of Plaintiff Roydan and Defendant CCB, there was a significant conversation with regard to a go-live date for the BLOODHOUND® Software system. Plaintiff Roydan identified the best go-live dates where the month end and weekends aligned. Plaintiff Roydan and Defendant CCB identified three possibilities: 1 March 2021, 1 May 2021, or 1 August 2021. Plaintiff Roydan offered that 1 March 2021 was a very aggressive time schedule and it would really require an "all hands on deck" approach with everything coming together like clockwork. Duane Reiswig of Defendant CCB suggested 1 August 2021 because of vacations and the short summer season in the Dakotas. Plaintiff Roydan and Defendant CCB agreed on a go-live date of 1 March 2021 with a backup of date of 1 May 2021.

34. Normally Plaintiff Roydan starts charging for software license fees to a customer when the contract is signed, but Plaintiff Roydan agreed that fees would not start until the agreed 1 March 2021 go-live date. If Defendant CCB delayed until 1 May 2021, then the fees to Defendant CCB would begin on 1 March 2021.

35. At the conclusion of the 23 September 2020 meeting Defendant CCB's President and CEO Duane Reiswig got out his checkbook and wrote a check for the up-front data conversion services fee. Duane Reiswig stated that his handshake is as good as any signature and he would sign the contract in the coming day. Manis Dec., ¶ 5.

36. On 23 September 2020 at 7:56 pm - Megan Manis wrote to Plaintiff Roydan on Slack: "It's official! Check for conversion and setup in hand....(still need the quotes signed - but it's an official handshake)". Manis Dec., ¶ 6.

37. On 24 September 2020 Duane Reiswig sent a summary of Defendant CCB's history as well as a breakdown of their project team. He stated that this was in preparation for the onsite discovery week planned in October. Megan Manis responded that Defendant CCB has a great group of employees and is excited to move forward. Ex. 25.

38. On 24 September 2020 Megan Manis sent a copy of revised contracts/quotes. Megan Manis asked Duane Reiswig to sign and return. Megan Manis also stated that Plaintiff Roydan's implementation team was ready to hit the ground running tomorrow (25 September 2020). Duane Reiswig replied to the email and said he would sign once Brent Olsen "tells me this is what we figured before and it is correct" and after it was run by Defendant CCB's in-house counsel Megan Brandriet. Duane Reiswig stated he planned to have the contracts/quotes signed by Monday, 28 September 2020. Ex. 26.

39. On 29 September 2020 Joe Cohen of Plaintiff Roydan hosted a 1.5 hour demo for the Client Services Team of Defendant CCB.

40. On 29 September 2020 Joe Cohen of Plaintiff Roydan hosted a 1.5 hour demo for the Admin Team of Defendant CCB.

41. On 30 September 2020 Duane Reiswig confirmed that Defendant CCB's in-house "Attorney says it's ok" and that he was going to get the signed contract in the mail or e-sign the documents and send them to Megan Manis by 1 October 2020 after he had scanned through it himself. Ex. 27-28.

42. Additionally, on 30 September 2020 a series of additional emails went back and forth throughout the day between the parties setting up the details for the onsite discovery. Ex. 27-28

43. On 1 October 2020 in response to contract questions from Duane Reiswig, Beth Flores of Plaintiff Roydan sent an email to Duane Reiswig with updated quotes for licensing Plaintiff Roydan's BLOODHOUND® and ENCORE Software products. Ex. 29 – 30.

44. On 5 October 2020 there was a meeting between Defendant CCB and Plaintiff Roydan to discuss the Onsite Discovery Agenda. Ex. 31.

45. On 6 October 2020 Plaintiff Roydan conducted a product demonstration for Collection Managers and Supervisors of Defendant CCB. A copy of the interactive recording was sent to Brent Olsen and Kim Black of Defendant CCB as well as Megan Manis and Beth Flores of Plaintiff Roydan. Participants in the live demo included Duane Reiswig, Brent Olsen, Jeff Peterson, Ron Crane, and Kendra. Ex. 32 – 33.

46. From 11 October 2020 to 16 October 2020 Plaintiff Roydan sent employees onsite for the week to conduct and go through its standard discovery process. Ex. 34.

47. On 15 October 2020, while Plaintiff Roydan employees were onsite at CCB, Joe Cohen of Plaintiff Roydan conducted a demo of Plaintiff Roydan's VIEWPOINT Software product for Brent Olsen and other employees of Defendant CCB.

48. On 16 October 2020 Duane Reiswig indicated some caution in signing the contracts between Defendant CCB and Plaintiff Roydan. Ex. 35.

49. On 16 October 2020 there was an email exchange between Plaintiff Roydan (Ryan Manis, Dan Hornung and Megan Manis) and Defendant CCB (Duane Reiswig), in which Defendant CCB, among other things, asked for more discounts. In response, Megan Manis stated on behalf of Plaintiff Roydan that it must have a commitment today. Key points in Megan Manis's 16 October 2020 email included: "We have provided more discounts than we ever have in history. I continued to do this for you through our discussions to help with your transition. At

8

the end of the day we all have businesses to run. In business, you look to make good investments with good people. Building, supporting and hosting software costs money. We can only give so much of the farm away. We have built a Roydan family of customers that we are proud to serve. Customers that trust us with their business and their clients. This is one of the reasons we are transitioning into an ESOP company. We want to continue to have this relationship with our customers forever. This is the sort of relationship we feel that we can have with you and your agency. However, it is not fair to anyone involved to continue discussions without a commitment." "We appreciate your vetting process and look forward to receiving the signed agreements before Jeff and Ryan depart today. We know that you will make the decision that is best for you, your team, and the future of your company." Ex. 35.

50. On 16 October 2020 Ryan Manis of Plaintiff Roydan received hand-signed quotes/contracts from Duane Reiswig, President and CEO of Defendant CCB before leaving Defendant CCB for the airport to return to Wisconsin. Megan Manis addressed the employees of Plaintiff Roydan at 2:56pm to announce Defendant CCB as a new customer. Ex. 36 – 40.

51. In a 19 October 2020 email Duane Reiswig confirmed that he had signed the quotes/contracts. He stated: "Now that we are fully committed and looking forward to your statement of work and actually getting the process started, I don't think you will run into this "difficulty" again." Ex. 41.

52. In the same 19 October 2020 email Duane Resiwig confirmed that only Brenda Reiswig, himself, and Brent Olsen have the authority to approve anything that deals with expenses. Ex. 41.

53. On 27 October 2020 Plaintiff Roydan recommended starting weekly project meetings and requested action items. Ex. 42.

54. On 30 October 2020 a high level summary was sent from Plaintiff Roydan to Duane Reiswig, Kim Black, Matt Ford, and Brent Olsen regarding Plaintiff Roydan's understanding of Defendant CCB's business as well as how their partnership with Plaintiff Roydan will meet their needs moving forward. In this document, it is noted that if the project is delayed, the secondary go-live date that makes operational sense is the previously discussed 1 May 2021 date. Ex. 43.

55. From 5 November 2020 to 28 January 2021 Plaintiff Roydan and Defendant CCB engaged in weekly project meetings via teleconference. These continued through the end of January when Duane Reiswig put the project on hold. Ex. 44.

56. On 17 November 2020 digital quotes/contracts were accepted via the Quote Valet portal. Beth Flores completed the electronic signature step on behalf of Duane Reiswig for the QuoteWerks quotes that he had previously hand-signed. The electronic quote "package" included copies of the hand signed documents so that Plaintiff Roydan could track them in its quoting system. The original hand-signed documents completed on 14 October 2020 were noted in the digital comment section. Beth Flores sent an email to Duane Reiswig and Brent Olsen explaining what she was doing and that they could expect to see emails with copies of the signed quotes/contracts. Ex. 45 – 50.

57. On 25 November 2020 a revised Letter of Understanding was issued from Plaintiff Roydan to Defendant CCB based on feedback from Defendant CCB. Ex. 51.

58. From 3 December 2020 to 5 December 2020 Duane Reiswig asked, among other things, for assurance that the 1 March 2021 go live date could be met. Megan Manis responded that they were on track and that "Jeff Peterson will conduct a milestone check while onsite in January to assess where we are with setup. This will be the next indicator for preparedness for

10
Case 1:21-cv-00669-WCG   Filed 05/27/21   Page 10 of 16   Document 1

go-live." Duane Reiswig responds: "Sounds good, appreciate the update. Helps me relax a little bit!". Ex. 52 – 53.

59. On 30 December 2020 Duane Reiswig asks Dan Hornung to contribute to a sober living charity Duane Reiswig is involved in. As a good faith gesture, Dan Hornung does make a personal donation. Ex. 54 – 55.

60. On 18 January 2021 Duane Reiswig sends an email to numerous leaders at both Plaintiff Roydan and Defendant CCB listing over 21 "POSITIVES about Roydan and Bloodhound [Software]", which concluded: "This may help us [Defendant CCB] be a leader in the field again vs always trying to play catch up with what the other guys have." 1/18/2021 - Duane's Optimistic Thoughts - enough said. Ex. 56.

61. On 20 January 2021, Megan Manis of Plaintiff Roydan reorganized project meetings by department to empower the team at Defendant CCB and ensure a smooth transition to prepare for the 1 March 2021 go-live date. Ex. 57.

62. On 26 January 2021 Duane Reiswig indicated in an email to Megan Manis that Defendant CCB would have trouble meeting the 1 March 2021 go-live date and suggests going to the 1 May 2021 go-live date. Ex. 58.

63. On 28 January 2021 Megan Manis responds to Duane Reiswig's 26 January 2021 email that Plaintiff Roydan is confident that it can meet the 1 March 2021 go-live date. Specifically: "[Roydan] would be willing to consider shifting to a May 1st go-live date, with the expectation that all work and setup will still be completed by March 1st so the systems can be used side-by-side. This aids in repetitive training and confidence in preparation for go-live.' Ex. 58.

64. On 29 January 2021 cancellation occurs. Duane Reiswig states:

> We are going to have to put our conversion on hold to re-evaluate if the Bloodhound software is going to work for CCB.
> First I was thinking maybe we would just do a May 1 conversion date but no one on my board of directors / management team thinks that is doable either. And some real doubt about the program itself was raised so a re-evaluation is necessary.
> ***
> I will be in the office tomorrow if you'd like to visit or if you'd like some more specific reasons for this decision.
> I'm sorry this isn't working out like we both assumed and planned.

Ex. 59

65. On 29 January 2021 Megan Manis responds saying "we see no reason why a May 1st date would not be successful" and "We have instructed our team to continue as planned for the time being so we do not lose momentum. However, we respectfully ask that you make a final decision no later than Wednesday of next week about moving forward with a May 1st go-live date, or proceeding with cancellation of the project." Ex. 59.

66. On Sunday, 31 January 2021, Duane Reiswig sends Plaintiff Roydan a lengthy handwritten document explaining his reasons for wanting to put the project on hold. Ex. 60.

67. On Monday, 1 February 2021 Plaintiff Roydan attempts to call Duane Reiswig at 9:00am for a previously scheduled phone conference. Duane Reiswig does not show up and after 15 minutes has passed Megan Manis leaves him a follow up voicemail. Plaintiff Roydan then scheduled an afternoon meeting with Duane Reiswig, which he says he cannot make. Duane Reiswig leaves Megan Manis a voicemail saying he can meet at 9:30am Tuesday, 2 February 2021. Manis Dec., ¶ 7.

68. On Tuesday, 2 February 2021 Duane Reiswig and Plaintiff Roydan's team met via phone. Duane Reiswig expressed interest in delaying the project until later in the year. Plaintiff Roydan lets Duane Reiswig know that the next step is to proceed with an addendum to

the current agreement to allow the project to be placed on hold. Megan Manis lets Duane Reiswig know there will be fees associated with this delay. Duane Reiswig agrees to provide Plaintiff Roydan with a list of items he would like to see as proof of Plaintiff Roydan's readiness upon restarting the project in the future. Duane Reiswig provides the list later that day. Manis Dec., ¶ 8.

69. On Wednesday, 3 February 2021 Plaintiff Roydan delivers the contract addendum to Duane Reiswig via email. Duane Reiswig responds late in the evening that he has questions and would like to discuss the addendum on Thursday, 4 February 2021. He asks that the Data Holding Fee outlined in the addendum be lowered. Ex, 61.

70. On 4 February 2021 Defendant CCB cancels the project for its convenience. Ex. 62.

71. On 19 February 2021 Megan Manis sends Duane Reiswig all documents pertaining to his agreement cancellation along with the support schedules and exhibits. Specifically, Megan Manis's 19 February 2021 letter states, in part:

> For your convenience, on 4 February 2021 you chose to terminate your agreements with Roydan Enterprises, LTD (ROYDAN). Pursuant to the terms and conditions of the agreements, including paragraph 15.5 of the "Software ASP License Agreement" (see Exhibit A attached) between our companies we attach a schedule (Schedule A) of amounts owed by Credico/Credit Collections Bureau (CCB) to ROYDAN. These amounts … are due immediately. Reference copies of the agreements are attached as Exhibits A-F.

Ex. 63.

72. On 3 March 2021 after a phone conference the prior week with Duane Reiswig, Plaintiff Roydan provided a proposal for reinstating the project. Ex. 64.

73. On 8 March 2021 Duane Reiswig asks for an in-person meeting with Plaintiff Roydan and refers to the amounts Defendant CCB owes Plaintiff Roydan for Defendant CCB terminating the contract for convenience as a "fantasy." Ex. 64.

74. On 10 March 2021 Megan Manis agrees to the in-person meeting. Manis Dec., ¶ 9.

75. On 13 April 2021 there was an in person meeting between Defendant CCB and Plaintiff Roydan. Brent Olsen and Matt McCleod attended on behalf of Defendant CCB. Defendant CCB said it would offer a counter-proposal on or before 21April 2021. Ex. 66.

76. On 20 April 2021 Defendant CCB offered a series of unacceptable counter-proposals. Ex. 67.

77. On 27 April 2021 Megan Manis of Plaintiff Roydan wrote Duane Reiswig of Defendant CCB: "Your proposals come nowhere near resolving this situation. You chose to terminate your agreement for convenience. We have previously explained why that is so. We have also presented you with a bill for the cost of that termination action which you initiated. A copy of that bill is, again, attached to this email. By refusing to pay that bill for terminating your agreement for your company's convenience, your company is now in material breach of the agreement. You can fix that by paying the bill." Ex. 68.

78. Later on 27 April 2021 Duane Reiswig, President and CEO of Defendant CCB wrote Megan Manis of Plaintiff Roydan stating, among other things, that: "Your "fantasy" bill is not something that has been earned since it is based on anticipated usage 5 years from now" and again refused to pay the bill.

### COUNT I – BREACH OF CONTRACT

14

Case 1:21-cv-00669-WCG   Filed 05/27/21   Page 14 of 16   Document 1

79. Plaintiff Roydan hereby re-alleges and incorporates by reference paragraphs 1 through 78.

80. Plaintiff Roydan and Defendant CCB entered into binding written contracts. Ex. 1 – 6.

81. Plaintiff Roydan performed all the terms of the aforesaid binding written contracts.

82. Defendant CCB terminated those agreements for its own convenience.

83. Defendant CCB refused to pay the amounts owed for terminating for convenience.

84. Defendant CCB was put on notice of its resulting material breach and informed that it could fix the material breach by paying the amounts owed.

85. Defendant CCB refused to fix the material breach of the agreement.

86. Defendant CCB has breached the express terms of the written agreements it has with Plaintiff Roydan.

87. Plaintiff Roydan has been damaged in an amount to be determined at trial by Defendant CCB refusing to first pay the amounts it owed under the contracts for its termination for convenience and second by refusing, after notice, to fix its material breach of the agreement.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Roydan demands judgment and relief against Defendant CCB as follows:

A. For an order of specific performance requiring Defendant CCB to pay the amounts

owed for its terminating the agreement for its convenience.

  B. For judgment that Defendant CCB materially breached the agreement after failing to cure its breach.

  C. For Plaintiff Roydan's costs, disbursements, and attorneys' fees; and

  D. For such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure Rule 38, Plaintiff hereby demands a jury trial on all issues triable by jury.

Dated this 27th day of May, 2021.

            RYAN KROMHOLZ & MANION S.C.
            Attorneys for the Plaintiff,
            Roydan Enterprises, Ltd.

      By: s/Joseph A. Kromholz
            Joseph A. Kromholz
            State Bar No. 1002464
            John M. Manion
            State Bar No. 1021189

P.O. Address
P.O. Box 26618
Milwaukee, WI  53226-0618
Ph:  (262) 783-1300
jkromholz@rkmiplaw.com
jmanion@rkmiplaw.com